## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CONNIE ONELY | : | |
| 700 Lower State Road | : | CIVIL ACTION |
| North Wales, PA 19454 | : | |
| | : | NO.: _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| REDNER'S MARKETS, INC. d/b/a | : | |
| REDNER'S | : | |
| 2850 Audubon Village Drive | : | **JURY TRIAL DEMANDED** |
| Audubon, PA 19403 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Connie Onely (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     Plaintiff has initiated this action to redress violations by Redner's Markets, Inc. d/b/a Redner's (*hereinafter* "Defendant") of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq*.), the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), and the Pennsylvania Human Relations Act ("PHRC").[1]     As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII and the ADA.  Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII and the ADA.

## JURISDICTION AND VENUE

2.     This Court may properly maintain jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

3.     This action is initiated pursuant to a federal law.  The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5.     Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7.     Plaintiff is an adult who resides at the above-captioned address.

8.      Redner's Market, Inc. d/b/a Redner's is a privately held supermarket chain, with one such chain store located at the above-captioned address.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11.     Plaintiff is a black (African American) adult female.

12.     Plaintiff was employed with Defendant for approximately 4 years, until her unlawful termination (discussed further *infra*) on or about October 3, 2020.

13.     For the first three years of her employment with Defendant, Plaintiff was employed at the Defendant's Lansdale, Pennsylvania location until she transferred to Defendant's Audubon, Pennsylvania location in or about October of 2019.

### -Race Discrimination-

14.     At Defendant's Lansdale location, Plaintiff was one of only two black employees within the meat department.  At Defendant's Audubon location, Plaintiff was the only black employee within the meat department.

15.     In Plaintiff's experience working with Defendant, she came to learn that racism was not only condoned by Defendant's management but also exhibited by them as well.

16.     For example, during Plaintiff's employment with Defendant's Lansdale, Pennsylvania location, she was consistently subjected to discriminatory treatment based on her race by a male Caucasian employee in the meat department, Dave Goodman (*hereinafter* "Goodman").

3

17.     Goodman consistently made racially offensive comments to Plaintiff, talked down to her, and treated her in a rude and condescending manner (unlike her non-black counterparts).

18.     Goodman further made Plaintiff's working environment so hostile that when she had the opportunity to transfer to the Audubon location (a store that was much further from her house than the Lansdale location), Plaintiff immediately jumped at the opportunity.

19.     Plaintiff had expressed concerns of racial discrimination to upper management and Defendant's Human Resources ("HR") Department on several occasions; however, her concerns went unresolved.

20.     When Plaintiff arrived at Defendant's Audubon location, she realized that management did not enforce professionalism in the workplace.   By way of example, but not intended to be an exhaustive list, other employees Plaintiff worked with would:

      a. Constantly curse (in general and at one another);

      b. Talk about sex (including asking Plaintiff about her personal sex life and telling Plaintiff she should buy sex toys); and

      c. Discuss other personal and political matters.

21.     While Defendant's upper management was well aware of the aforesaid unprofessional and hostile behavior, they refused to do anything to correct it.

22.     One particular individual that Plaintiff worked with in the meat department, Sandra McGrory (Caucasian – *hereinafter* "McGrory"), would consistently exhibit racial discriminatory animus towards Plaintiff and other employees within Defendant.  For example, but not intended to be an exhaustive list, McGrory:

      a. Made negative comments about another black employee's hair (telling her that it was offensive) and told her she needed to change her hair;

    b.   Told Plaintiff that she did not believe in the Black Lives Matter movement and stated that the racial turmoil in the United States was being created by a group/movement called Antifa;

    c.   Told Plaintiff she believed that one of the black individuals whose death was being protested "should have died" because he was a drug addict;

    d.   Expressed her opinion that the death of black Emergency Room Technician, Breonnna Taylor was justified because her boyfriend was a drug dealer; and

    e.   Consistently tried to get Plaintiff to vote for President Trump in the 2020 presidential election.

23.    Plaintiff had expressed concerns to Defendant's management that she believed McGrory was racist; however, she was advised to leave it alone.  Needless to say, Plaintiff's concerns were never addressed, and McGrory's behavior continued.

24.    Thereafter, on or about September 25, 2020, the last physical day that Plaintiff worked for Defendant, the Antifa group/movement in relation to the Black Lives Matter movement was brought up in discussion.

25.    During the aforesaid discussion (*see* Paragraph 24, *supra*), Plaintiff simply stated to McGrory that she watched CNN the other night and it said that Antifa does not exist, but that CNN did confirm that another group by the name of Proud Boys did exist.  McGrory responded to Plaintiff that she was not aware of the group name Proud Boys, and Plaintiff told her to Google it. McGrory became very defensive and aggressive and asked Plaintiff, "have I ever told you something that wasn't true?" to which Plaintiff responded, "I have questioned some things that you have said."

26.     At this point in the aforesaid discussion, McGrory became extremely angry and started screaming at Plaintiff, threw a pot/pan in the meat department, screamed in Plaintiff's face, and stormed out of the department.   Plaintiff then finished her shift and went home.

27.     Soon thereafter, Plaintiff had a meeting with Defendant's Store Director, Karl Michener (Caucasian – *hereinafter* "Michener"), wherein she was asked to give her side of the incident that occurred with McGrory just a few days prior.

28.     Following the aforesaid meeting with Michener (*see* Paragraph 27, *supra*), Plaintiff was again sent home.

29.     Thereafter, on or about October 3, 2020, Plaintiff was called by Michener and informed that she was being terminated from her employment with Defendant.  When Plaintiff asked why she was being terminated, she was informed it was because she had engaged in "inappropriate conversations."

30.     Upon information and belief, McGrory was not terminated, even though she consistently engaged in inappropriate and unprofessional conversations with Plaintiff, exhibited racially discriminatory animus towards other employees, and was engaged in the same incident/conversation that Plaintiff was terminated for.

31.     Furthermore, other employees within the meat department had engaged in inappropriate conversations almost every day that Plaintiff was employed there. While Defendant's management was well aware of these conversations (as some had occurred in their presence), Plaintiff was the only employee terminated.

32.     Therefore, Plaintiff believes and avers that Defendant selectively enforced this policy against Plaintiff and ultimately terminated her because of her race (black) and/or because she had previously expressed concerns of race discrimination.

## -Gender Discrimination-

33.     In addition to the discrimination and retaliation that Plaintiff was subjected to as a result of her race and/or her complaints of race discrimination, she was also subjected to discrimination and retaliation because of her gender and/or complaints of/opposition to unfair treatment as a result of her gender.

34.     Upon Plaintiff's observations and belief, Defendant's work environment has been disparate and unfairly harsh toward female employees.

35.     Throughout the course of Plaintiff's employment with Defendant in both the Lansdale and Audubon stores, she was subjected to discrimination, harassment, and disparate treatment by Defendant's male management and employees.  For example, but not intended to be an exhaustive list, unlike Plaintiff's male co-workers:

   a.   Plaintiff was treated in a condescending manner and regularly talked down to;

   b.   Plaintiff was subjected to verbal admonishment for petty issues that her male co-workers were not disciplined for;

   c.   Plaintiff was routinely denied the opportunity for additional hours, including hours she requested on some Sundays, which were compensated at a higher hourly rate;

   d.   Plaintiff was left to clean the meat department by herself after her male co-workers had purposefully trashed the department the night before;

   e.   Plaintiff was regularly informed by her male co-workers that it was her job to wait on customers in the meat department – insinuating that it was her job as a woman to serve people;

   f.   Plaintiff was berated by male management in the Audubon store for staying past the end of her shift to wait on a customer because her male co-workers were

huddled in the back not working; however, her male co-workers were not admonished or disciplined for their behavior; and

g. Policies were selectively enforced against Plaintiff, which were not enforced against male co-workers.

36.     Plaintiff expressed concerns of gender discrimination to Defendant's management; however, they were largely ignored.  Instead, Plaintiff was abruptly terminated on or about October 3, 2020, for pretextual reasons (discussed *supra*).

37.     Following her termination, Plaintiff learned that the alleged statement which resulted in her termination even had references that she had discussed gender discrimination with McGrory.

38.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her gender and/or in retaliation for her complaints of/objections to gender discrimination.

**-Disability Discrimination-**

39.     In addition to her aforesaid claims of race and gender discrimination and retaliation, Plaintiff was also subjected to discrimination and retaliation because of her serious health conditions and requests for accommodations.

40.     Plaintiff has and continues to suffer from serious health conditions, including but not limited to, severe hypertension (and resulting stroke risk for which she takes medication) and heart conditions, for which Plaintiff is under a doctor's care.

41.     Despite her aforementioned serious health conditions and limitations, Plaintiff was still able to perform the essential duties of her job well with Defendant; however, Plaintiff did

8

require reasonable medical accommodations at times, including but not limited to intermittent time off for doctor's visits and to care for and treat for her aforesaid disabilities.

42.     After Plaintiff apprised Defendant's management of her serious health conditions and her need for accommodations, Defendant's management, including but not limited to Michener and Plaintiff's direct supervisor, Marco (last name unknown, *hereinafter* "Marco"), exhibited clear frustration with Plaintiff's need for accommodations and began to closely surveil her work.

43.     Defendant's management also pressured Plaintiff to shorten her hours. Plaintiff explained that if she shortened her hours, she would lose her health coverage (which she needed to treat her aforesaid disabilities).

44.     After consistently being subjected to hostility and animosity as a result of her aforesaid health conditions and requests for accommodations, Plaintiff was abruptly terminated on or about October 3, 2020, for pretextual reasons (discussed *supra*).

45.     Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; and (3) her requested accommodations (which constitutes illegal retaliation).

**COUNT I**
**Violations of 42 U.S.C. Section 1981**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

46.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

47.    During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her race.

48.    Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

49.    Plaintiff was ultimately terminated on or about October 3, 2020, for completely pretextual reasons.

50.    Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

51.    These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Section 1981.

**COUNT II**
**Violations of Title VII**
**([1] Race Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

52.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53.    During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her race.

54.    Instead of investigating Plaintiff's aforesaid complaints of and/or objections to race discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

55.   Plaintiff was ultimately terminated on or about October 3, 2020, for completely pretextual reasons.

56.   Plaintiff believes and therefore avers that she was really terminated because of her race and/or her complaints of/objections to race discrimination.

57.   These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT III**
**Violations of Title VII**
**([1] Gender Discrimination; [2] Retaliation; and [3] Hostile Work Environment)**

58.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.   During Plaintiff's employment with Defendant, she was subjected to discrimination and a hostile work environment through disparate treatment, pretextual admonishment, and demeaning and/or derogatory treatment because of her gender.

60.   Plaintiff was treated disparately with respect to work, policies, and termination contrary to her male co-workers.

61.   Instead of properly investigating Plaintiff's aforesaid complaints of and/or objections to gender discrimination, Defendant's management ignored them and left her legitimate concerns unresolved.

62.   Plaintiff was ultimately terminated on or about October 3, 2020, for completely pretextual reasons.

63.   Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her gender and/or her complaints of/objections to gender discrimination.

64.   These actions as aforesaid constitute unlawful discrimination, retaliation, and a hostile work environment under Title VII.

**COUNT IV**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; & [3] Hostile Work Environment)**

65.   The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66.   Plaintiff suffers from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities.

67.   Despite Plaintiff's aforesaid health conditions and limitations, she was still able to perform the duties of her job well with Defendant; however, Plaintiff did (at times) require reasonable medical accommodations.

68.   Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent time off for doctor's visits and to care for and treat for her aforesaid serious health conditions.

69.   During Plaintiff's employment with Defendant, she was subjected to a hostile work environment through disparate treatment and demeaning and/or derogatory treatment because of her disabilities and requests for accommodations, until her abrupt termination on or about October 3, 2020, for pretextual reasons.

70.   Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated from Defendant because of: (1) her known and/or perceived health problems; (2) her record of impairment; and (3) her requested accommodations (which constitutes illegal retaliation).

71.   These actions aforesaid constitute violations of the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

      A.      Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

      B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

      C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

      D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

      E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

      F.      Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

      G.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  October 29, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## <u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

Connie Onely                                                        :                    CIVIL ACTION

v.                                                        :

Redner's Markets, Inc. d/b/a Redner's              :                    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| | | |
|---|---|---|
| 10/29/2021 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff  to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___700 Lower State Road, North Wales, PA 19454___

Address of Defendant: ___2850 Audubon Village Drive, Audubon, PA 19403___

Place of Accident, Incident or Transaction: ___Defendant's place of business___

---

***RELATED CASE, IF ANY:***

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when  *Yes*  is answered to any of the following questions:

1.   Is this case related to property included in an earlier numbered suit pending or within one year       Yes [ ]      No [X]
previously terminated action in this court?

2.   Does this case involve the same issue of fact or grow out of the same transaction as a prior suit       Yes [ ]      No [X]
pending or within one year previously  terminated action in this court?

3.   Does this case involve the validity or infringement of a patent  already in suit or any earlier       Yes [ ]      No [X]
numbered case pending or within one year previously  terminated action of this court?

4.   Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights       Yes [ ]      No [X]
case filed by the same individual?

I certify that, to my knowledge, the within case [ ] is / [X] is not  related to any case now pending or within one year previously terminated action in
this court except as noted above.

DATE: __10/29/2021__          _____          ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**     ***Federal Question Cases:***

- [ ] 1.   Indemnity Contract, Marine Contract, and All Other Contracts
- [ ] 2.   FELA
- [ ] 3.   Jones Act-Personal Injury
- [ ] 4.   Antitrust
- [ ] 5.   Patent
- [ ] 6.   Labor-Management Relations
- [X] 7.   Civil Rights
- [ ] 8.   Habeas Corpus
- [ ] 9.   Securities Act(s) Cases
- [ ] 10.  Social Security Review Cases
- [ ] 11.  All other Federal Question Cases
       *(Please specify):* _____

**B.**     ***Diversity Jurisdiction Cases:***

- [ ] 1.   Insurance Contract and Other Contracts
- [ ] 2.   Airplane Personal Injury
- [ ] 3.   Assault, Defamation
- [ ] 4.   Marine Personal Injury
- [ ] 5.   Motor Vehicle Personal Injury
- [ ] 6.   Other Personal Injury *(Please specify):* _____
- [ ] 7.   Products Liability
- [ ] 8.   Products Liability – Asbestos
- [ ] 9.   All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf___ , counsel of record *or* pro se plaintiff, do hereby certify:

[X]   Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case
exceed the sum of $150,000.00 exclusive of interest and costs:

[ ]   Relief other than monetary damages is sought.

DATE: __10/29/2021__          _____          ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| ONELY, CONNIE | REDNER'S MARKETS, INC. D/B/A REDNER'S |

| **(b)**   County of Residence of First Listed Plaintiff   Montgomery<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   Montgomery<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
|---|---|
| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*<br>Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com | Attorneys *(If Known)* |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1  U.S. Government<br>  Plaintiff | X 3  Federal Question<br>  *(U.S. Government Not a Party)* | |
| ☐ 2  U.S. Government<br>  Defendant | ☐ 4  Diversity<br>  *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>  of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>  of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>  Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury -<br>  Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 690 Other<br><br><br>**LABOR**<br>☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Management<br>  Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>  Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>  New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>  3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>X 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>  Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of<br>  Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>  Actions | ☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 899 Administrative Procedure<br>  Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| X 1  Original<br>  Proceeding | ☐ 2  Removed from<br>  State Court | ☐ 3  Remanded from<br>  Appellate Court | ☐ 4  Reinstated or<br>  Reopened | ☐ 5  Transferred from<br>  Another District<br>  *(specify)* | ☐ 6  Multidistrict<br>  Litigation -<br>  Transfer    ☐ 8  Multidistrict<br>  Litigation -<br>  Direct File |

| VI.  CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>Section 1981 (42USC1981); Title VII (42USC2000); ADA (42USC12101)<br>Brief description of cause:<br>Violations of Section 1981, Title VII, ADA and the PHRC. |
|---|---|

| VII.  REQUESTED IN<br>  COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION**<br>  UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint:<br>**JURY DEMAND:**   X Yes    ☐ No |
|---|---|---|---|

| VIII.  RELATED CASE(S)<br>  IF ANY | *(See instructions):*    JUDGE _____ DOCKET NUMBER _____ |
|---|---|

DATE<br>10/29/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

| Print | Save As... | Reset |
|---|---|---|