IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CONNIE ONELY,**<br>          **Plaintiff,**<br><br>          v.<br><br>**REDNER'S MARKETS, INC.,**<br>          **Defendant.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  21-4785** |

**MEMORANDUM OPINION**

      Plaintiff Connie Onely, a black woman, was an employee at Defendant Redner's Markets Inc.'s grocery stores for four years.  She alleges that, during this time, she experienced race, sex, and disability discrimination, including discriminatory comments and treatment by colleagues and managerial indifference, ultimately leading to her wrongful termination in October 2020. One year later, Plaintiff filed suit alleging (1) retaliation, hostile work environment, and discrimination on the basis of race under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) retaliation, hostile work environment, and discrimination based on sex under Title VII; and, (3) retaliation, hostile work environment, and discrimination on the basis of an actual, perceived, or record of disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]

      Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants' Motion only analyzes the raced-based hostile work

---

[1] The Complaint briefly "referenced . . . for notice purposes" additional claims that Plaintiff intends to file under the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, *et seq.*, once she has exhausted her administrative remedies.  *See Burgh v. Borough Council*, 251 F.3d 465, 471 (3d Cir. 2001) (explaining that the Pennsylvania Human Relations Commission has "exclusive jurisdiction over the claim for a period of one year.")  Unless and until Plaintiff has exhausted her administrative remedies and amended her Complaint to add such claims, they are not part of this suit.

1

environment claim under Section 1981 and Title VII, and the discrimination and hostile work environment claims based on disability under the ADA.  It also mentions, but only in passing, Plaintiff's retaliation claims (on the basis of race, sex, and disability), and her sex-based claims of discrimination and hostile work environment.

For the reasons that follow, Defendant's Motion will be denied in part and granted in part.

## I.   FACTUAL ALLEGATIONS[2]

Plaintiff started out working at Defendant's supermarket in Lansdale, Pennsylvania. During her time there, a white male colleague named Dave Goodman "consistently made racially offensive comments to Plaintiff, talked down to her, and treated her in a rude and condescending manner" that he did not adopt with non-black employees.  Plaintiff expressed concerns of racial discrimination with upper management and human resources several times, but without seeing any satisfactory resolution.  Because of Goodman's behavior, Plaintiff seized an opportunity to transfer to Defendant's Audubon location, even though it was much further from her home.

At the Audubon store, Plaintiff ran into trouble with another colleague, a white woman named Sandra McGrory.  Plaintiff alleges that McGrory "would consistently exhibit racial discriminatory animus towards Plaintiff and other employees," including telling a black employee that she needed to change her hair because it was "offensive."  McGrory told Plaintiff that she "did not believe in the Black Lives Matter movement"; that one of the black individuals

---

[2] The following facts are derived from the Complaint.  Defendant attached to its Motion, and urged the Court to consider, a transcript of a hearing that took place before an Unemployment Compensation Referee.  A document attached to a motion to dismiss may be considered if the complaint is based on it.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (establishing exception to general rule that, at the motion to dismiss stage, consideration is given only to "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").  The transcript cannot be considered because Plaintiff's claims are not based on the hearing.  Similarly, new facts asserted by Defendant in its Motion have been disregarded.

whose death was being protested "should have died" because he was a drug addict; and that the death of Breonna Taylor, a black woman, was "justified because her boyfriend was a drug dealer."

Plaintiff told management she believed that McGrory was "racist." Management told her to "leave it alone." On September 25, 2020, Plaintiff and McGrory got into a heated discussion that ended in McGrory screaming at Plaintiff, throwing a pot or pan, and storming out. The Store Director, Karl Michener, soon met with Plaintiff to discuss the incident. On October 3, Michener informed Plaintiff that she was being terminated for engaging in "inappropriate conversations." McGrory was not terminated.

Plaintiff also alleges that, at both store locations, she experienced gender-based discrimination, including (1) being treated condescendingly and "talked down to"; (2) being admonished for "petty issues" for which male colleagues were not disciplined; (3) being routinely denied additional hours, including higher-paid Sunday hours; (4) being made to clean up the meat department alone after male colleagues had trashed it the night before; (5) being told by male colleagues that it was her job to wait on customers in the meat department (which Plaintiff understood as expressing the sentiment that it was her job as a woman to serve people); and, (6) being berated by male management for staying late to wait on a customer while her male colleagues loitered in the back, not working and undisciplined. Plaintiff complained to management, but she was "largely ignored."

Plaintiff also alleges that she suffers from serious health conditions, including heart conditions and severe hypertension that puts her at risk of a stroke and requires her to take medication. After Plaintiff informed management of her conditions and requested accommodations to see her doctor or otherwise take care of herself, management "exhibited clear

frustration," "began to closely surveil her work," and pressured her to work fewer hours.

## II. LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At this stage, the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Legal conclusions are disregarded and well-pleaded facts are taken as true. *Id.* at 210-11. All reasonable inferences are drawn in the plaintiff's favor. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).[3]

## III. DISCUSSION

### A. Retaliation

Plaintiff alleges retaliation based on race (Section 1981 and Title VII), gender (Title VII), and disability (the ADA). To plead a retaliation claim, a plaintiff must advance "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in [protected activity]; (2) the employer took adverse action

---

[3] Defendant's Motion references the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework, but it is well-established that *McDonnell Douglas* does not govern at the motion to dismiss stage. "To defeat a motion to dismiss, it is sufficient to allege a prima facie case. But it is not necessary." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (internal citation omitted). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (alteration in original) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). *See also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (holding that a *prima facie* case is an evidentiary standard, not a "proper measure of whether a complaint fails to state a claim" (citation omitted)).

against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789.[4]

Defendant states that all of Plaintiff's retaliation claims must be dismissed because she has alleged no facts sufficient to show that she engaged in protected activity constituting the "but for" cause of her termination. It does not, however, provide any cogent argument in support of this statement as it must if its position is to be considered on this motion. *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (quoting *Shell Petroleum, Inc. v. United States*, 182 F.3d 212, 218 (3d Cir. 1999)) (a litigant "must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits.") Defendant's general challenges to Plaintiff's retaliation claims do not distinguish between Plaintiff's claims based on race, gender, and disability and do not analyze the complaints of race and gender discrimination that Plaintiff allegedly lodged with management. As no more than "conclusory assertion(s)" that Plaintiff did not engage in protected activity or show causation are made by Defendant here, the challenge is waived on this motion. *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997).[5]

---

[4] The elements are the same for retaliation claims based on race, gender, and disability. *See Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (race-based claim under Section 1981); *Connelly*, 809 F.3d at 789 (gender-based claim under Title VII); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (disability-based claim under the ADA).

[5] Similarly, Defendant's only arguments against Plaintiff's gender-based discrimination and hostile work environment claims are that the connection between the conduct alleged by Plaintiff and her sex is "speculative" and that the incidents she alleged "cannot related to discriminatory animus." Such conclusory statements are not an argument and, accordingly, shall not be considered on this Motion. *Reynolds*, 128 F.3d at 178. Even so, Plaintiffs factual allegations that she—unlike her male co-workers—was (1) "treated in a condescending manner and regularly talked down to"; (2) admonished for "petty issues"; (3) "routinely denied the opportunity for additional hours," including higher-paid weekend hours; (4) left to clean up the meat department after her male co-workers "purposefully trashed" it; (5) informed by male co-workers that it was her "job" to wait on customers; and, (6) berated by male management for staying late to wait on a customer while male co-workers idled in the back of the store, are specific, not speculative, and taken as true, they could reasonably lead to an inference of discriminatory animus.

5

### B. Race-Based Hostile Work Environment

To plead a hostile work environment claim, Plaintiff must allege facts sufficient to raise a reasonable inference that (1) she suffered intentional discrimination because of her race; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would detrimentally affect a reasonable person in like circumstances; and, (5) the existence of *respondeat superior* liability. *Castleberry*, 863 F.3d at 263.[6] "[A]ll the circumstances" must be examined, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).

Defendant argues that Plaintiff's race-based hostile work environment claim under Section 1981 and Title VII must be dismissed because the Complaint is "devoid of a pattern of discrimination which can be directly tied to Onely's race."[7] Specifically, Defendant contends that the "conversations and discussions" that allegedly occurred constitute "political discussions" that "would as a matter of common sense not be deemed discriminatory as a matter of law" in the absence of any "allegations of racial epithets, racially inappropriate jokes, symbols traditionally associated with racism, or threats of violence based on [Plaintiff's] race."[8]

---

[6] Plaintiff's Title VII and Section 1981 claims are analyzed together because "the substantive elements . . . are generally identical." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

[7] Plaintiff brought race-based claims of discrimination, retaliation, and hostile work environment pursuant to Section 1981 and Title VII. Defendant's arguments concerning retaliation have been addressed. As Defendant advanced none concerning discrimination, any such argument has been waived. *See Duran v. Equifirst Corp.*, 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed."); *United States v. Healy*, 2013 WL 1624310, at *1 (M.D. Pa. Apr. 15, 2013) ("[I]ssues not briefed are deemed waived."). Therefore, the subsequent analysis is limited to the hostile work environment claim.

[8] As Defendant does not challenge the third, fourth, or fifth elements of Plaintiff's hostile work environment claims, any such arguments are waived. *See Duran*, 2010 WL 936199, at *3; *Healy*, 2013 WL 1624310, at *1.

6

After disregarding legal conclusions, *Fowler*, 578 F.3d at 210-11, the facts supporting Plaintiff's race-based hostile work environment claim may be summarized as follows: (1) at the Lansdale location, Goodman "consistently" made racially offensive comments to Plaintiff, talked down to her, and treated her rudely and condescendingly;[9] (2) Goodman did not treat non-black colleagues this way; (3) the environment created by Goodman affected her to the point that she "jumped at the opportunity" to transfer to a different store, even though it was "much further from her house"; (4) at the Audubon location, McGrory told another black employee that she had to change her "offensive" hair; (5) McGrory said that she believed that the high-profile deaths of two black people "should have" happened or were "justified" because of a purported connection to drugs; and, (7) Plaintiff was one of two black employees within the meat department at the Lansdale location and the only black employee in the meat department at the Audubon location.

Hostile work environment is a theory of liability designed to remedy "the cumulative effect of a thousand cuts" and acts "which are not individually actionable . . . may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006). Goodman allegedly treated Plaintiff so poorly compared to non-black employees, and with such consistency, that she was willing to transfer to a location much further from her home to escape him. McGrory's comment that a black employee's hair was "offensive" could reasonably be viewed as a race-based insult. And McGrory's characterization

---

[9] Defendant argues that none of the acts that occurred at the Lansdale store are actionable because they fall outside the statutory limitations period for the filing of Plaintiff's administrative discrimination complaint. But "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e–5(e)(1)). Therefore, "[it] does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.*

of the deaths of two black people as "justified" or something that "should have" happened—a view McGrory chose to express to Plaintiff, the only black employee in the department—could reasonably be considered not only offensive, but threatening.

Although it is questionable whether these incidents are severe enough to alone constitute discrimination, when considered as a whole, they form a series of events that allegedly occurred "consistently" throughout Plaintiff's time of employment and which, cumulatively, permit a reasonable inference that Plaintiff suffered intentional discrimination that was either severe or pervasive "because of her race." At the motion to dismiss stage, these factual allegations suffice to state a claim for a race-based hostile work environment.

### C. Disability-Based Claims

The elements of a disability-based discrimination claim are: "(1) that [plaintiff] is disabled within the meaning of the ADA, (2) that [she] is otherwise qualified for the job, with or without reasonable accommodations, and (3) that [she] was subjected to an adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). A plaintiff is disabled within the meaning of the ADA if she has: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id*. (quoting 42 U.S.C. § 12102(2) (2006) (current version at 42 U.S.C. § 12102(1))).

The Complaint asserts disability claims based on Plaintiff's actual "serious health conditions" under 42 U.S.C. § 12102(1)(A).[10]

---

[10] The Complaint also alleges, albeit in passing, a disability discrimination claim and hostile work environment claim based on "her record of impairment" (*id*. § 12102(1)(B)) and "perceived health problems" (*id*. § 12102(1)(C)). But Defendant's Motion only challenges Plaintiff's hostile work environment and discrimination claims under 42

A complaint based on actual disability under 42 U.S.C. § 12102(1)(A) need not provide detail about the life activities affected by the alleged disability or about the nature of the plaintiff's substantial limitations. However, it must plausibly suggest that the plaintiff has substantial limitations due to a disability. *Fowler*, 578 F.3d at 213. In *Fowler*, the allegation that an impairment limited the plaintiff to sedentary work was held to "plausibly suggest[] that she might be substantially limited in the major life activity of working." *Id*. Plaintiff has not alleged that her conditions restrict her activities at all. The mere fact that Plaintiff needs to take medication or go to the doctor periodically does not mean she is disabled within the meaning of the ADA.

Plaintiff's disability discrimination claim under 42 U.S.C. § 12102(1)(A) will accordingly be dismissed without prejudice for failure to state a claim.[11]

### D. Punitive Damages

Finally, Defendant moved to dismiss Plaintiff's demand for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff has not pled "sufficiently egregious conduct and bad motive."

Under Federal Rule of Civil Procedure 8(a), a "pleading that states a claim for relief" must contain "(2) a short and plain statement of the claim showing that the pleader is entitled to relief" and "(3) a demand for the relief sought."

In *Iqbal*, the Supreme Court held that, to satisfy the pleading standard announced in Rule

---

U.S.C. § 12102(1)(A). Therefore, Plaintiff's disability discrimination and hostile work environment claims based on 42 U.S.C. § 12102(1)(B) and (C) remain in the case. *See Duran*, 2010 WL 936199, at *3; *Healy*, 2013 WL 1624310, at *1.

[11] As the existence of a disability within the meaning of the ADA is also an element of Plaintiff's hostile work environment claim, that claim will be dismissed as well, insofar as it is based on the existence of an actual disability under 42 U.S.C. § 12102(1)(A). *See Walton v. Mental Health Ass'n Se. Pa.,* 168 F.3d 661, 667 (3d Cir. 1999) (setting out elements of a disability-based hostile work environment claim).

8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 570). A complaint that fails to meet this Rule 8(a)(2) standard is subject to dismissal under Rule 12(b)(6). *Id*. at 678. By contrast, a Rule 8(a)(3) prayer for relief is not subject to dismissal under Rule 12(b)(6) because, for purposes of the "sufficiency of a pleading, . . . the demand for judgment is not considered part of the claim." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1255 (4th ed. Apr. 2022 Update) (collecting cases). *See also Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108-09 (8th Cir. 2011) ("The amount of damages to be recovered is based upon the proof, not the pleadings." (citing Fed. R. Civ. P. 54(c))); *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) (demand for relief required by Rule 8(a)(3) "is not itself part of the plaintiff's claim"); *Global Arena, LLC v. Eterpreting, LLC*, 2016 WL 7156396, at *2 (E.D. Pa. Dec. 8, 2016) (a demand for relief under Rule 8(a)(3) "is not the proper subject of a Rule 12(b)(6) motion"); *Reininger v. Oklahoma*, 292 F. Supp.3d 1254, 1266 (W.D. Okla. 2017) ("[W]hether a particular remedy, such as punitive damages, is 'recoverable in a case is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action.'" (citation omitted)); *Kruse v. Repp*, --- F. Supp.3d ---, 2020 WL 1317479, at *34 (S.D. Iowa 2020) ("Nor is it a proper use of a motion under Rule 12(b)(6) to challenge the pleading of a prayer for relief."). Accordingly, Defendant's Motion will be denied as to punitive damages.

    An appropriate order follows.

                                                **BY THE COURT:**

                                                /S/WENDY BEETLESTONE, J.

                                                _____

                                                **WENDY BEETLESTONE, J.**