Jeffrey R. Elliott, Esquire
Attorney I.D. 38147
KOZLOFF STOUDT
2640 Westview Drive
Wyomissing, PA 19610
610-670-2552                                          Attorney for Defendant

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONNIE ONELY, | : CIVIL ACTION |
| Plaintiff | : |
| | : |
| v. | : No. 21-cv-4785 |
| | : |
| REDNER'S MARKETS, INC. | : |
| Defendant | : Assigned to: Wendy Beetlestone, J. |

---

## EXHIBIT "F"



UNEMPLOYMENT COMPENSATION BOARD OF REVIEW
ROOM 1116, LABOR & INDUSTRY BUILDING
651 BOAS STREET
HARRISBURG, PA 17121-0750

Phone: 717-787-5122    www.dli.pa.gov    Fax: 717-787-6125

## TRANSCRIPT OF TESTIMONY

**CLAIMANT:**  CONNIE I ONLEY
700 LOWER STATE RD 23-B7
NORTH WALES PA    19454

**SS NUMBER:**  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

**APPEAL NUMBER:**  21-69-I-2331

**DATE OF HEARING:**  5/26/2021 (TELEPHONE)

**PLACE OF HEARING:**  KING OF PRUSSIA PA

**HEARING BEFORE:**  R    REFEREE  TIFFANY MCMASTER

**APPEARANCES:**

| | | |
|---|---|---|
| Claimant | C | Connie I. Onley |
| Claimant's Attorney | CL | Allison Barker |
| Employer's Attorney | EL | Jason Hopp |
| Employer Witnesses | EW1 | Alexis Foreman |
| | EW2 | Karl Michener |
| | EW3 | Sandra McGrory |
| | EW4 | Shaun Rhoton |

*Auxiliary aids and services are available on request to individuals with disabilities.*
*Equal Opportunity Employer/Program*

BD-67 REV 1-16

KS - 000196
KS - MSJ 0001162

CONNIE I. ONLEY          21-09-I-2331                                    1

May 26, 2021

R        We are on record in Appeal Number 21-09-I-2331.  The
         Claimant is Connie Onley.  The Employer is Redner's Tiger
         Markets, Inc.  The parties are scheduled to participate in
         the hearing today by telephone.  The Referee is going to
         begin by calling the Claimant at Area Code 267, 475-8297,
         the Claimant's counsel at (215)639-0801, the Employer's
         counsel at (484)248-5820, the Employer's first witness at
         (484)248-5870, and then three witnesses for the Employer at
         Area Code 215, 527-2392.  The time is 8:30 a.m.
C        Hello?

R        Good morning.  May I speak with Connie Onley, please?
C        Speaking.  Good morning to you.

R        Good morning.  This is Appeals Referee McMaster calling
         about your unemployment hearing.  Are you ready to proceed?
C        Yes, ma'am, I am.

R        Okay.  I need to place you on hold while I contact the rest
         of the parties.  The next person I'm going to contact is
         your counsel.  While I'm doing that, if for any reason you
         get disconnected from the call, please hang up and I will
         call you back.  Okay?
C        Thank you very much, ma'am.
UF       Karpf Karpf & Cerutti.

R        Yes, may I speak with Allison Barker, please?
UF       May I ask who's calling?

R        Appeals Referee McMaster.
UF       Hold on one moment.
CL       Good morning.  This is Allison Barker.

R        Good morning, Ms. Barker.  This is Referee McMaster calling
         in reference to the hearing for Connie Onley.  Are you ready
         to proceed?
CL       Yes.

R        Okay.  I have your client on the other line so far.  I need
         to connect you into the call.  While I'm doing that, if you
         get disconnected, I will call you back.  Okay?
CL       Okay.

R        Okay.  Ms. Onley, do I still have you?
C        Yes, ma'am, you do.

R        Ms. Barker, do I still have you?

CONNIE I. ONLEY                21-09-I-2331                                    2

CL    Yes.

R     All right.  I need to place you both on hold while I begin
      contacting the representatives from the Employer.  Same
      instruction.  If for any reason during this process you get
      disconnected, once I realize you are no longer on the line,
      I will call you back.  Okay?

CL    Okay, yes.

EL    Hello, this is Jason Hopp.

R     Mr. Hopp, this is Appeals Referee McMaster calling in
      reference to the hearing for Connie Onley.  Are you ready to
      proceed?

EL    Yes.

R     And just so I'm aware, sir, are you in-house counsel?

EL    Yes.

R     Okay.  All right.  So far, I have the Claimant and her
      counsel on the other line.  I need to connect you into that
      call.  While I'm doing that, if you get disconnected, please
      hang up and I will call you back.  Okay?

EL    Okay.

R     Ms. Onley, do I still have you?

C     Yes, ma'am.

R     Ms. Barker?

CL    Yes.

R     And Mr. Hopp?

EL    Yes.

R     Okay.  I need to place you all on hold while I continue
      contacting the individuals for the Employer.  Same
      instruction.  If you get disconnected, hang up and I will
      call you back.

EW1   Alexis.

R     I'm sorry, is this Alexis Foreman?

EW1   Yes, it is.

R     Ms. Foreman, this is Appeals Referee McMaster calling about
      the unemployment hearing for Connie Onley.  Are you ready to
      proceed?

EW1   Yes, I am.

R     Okay.  So far, I have other parties on the other line in the
      call.  Well, I need to connect you into that at this time.

KS - 000198
KS - MSJ 0001164

CONNIE I. ONLEY                21-09-I-2331                                    3

　　　　　　　If you get disconnected while I'm doing that, hang up and I
　　　　　　　will call you back.  Okay?
EW1　　　　Okay, thank you.

R　　　　　Okay.  Ms. Onley, do I still have you?
C　　　　　Yes, ma'am.

R　　　　　Ms. Barker?
CL　　　　 Yes.

R　　　　　Mr. Hopp?
EL　　　　 Yes.

R　　　　　Ms. Foreman?
EW1　　　　Yes.

R　　　　　All right.  There is one last number I need to call.  I'm
　　　　　　　going to place you all on hold at this time.
EW2　　　　Hello?

R　　　　　Yes, may I speak with Karl Michener, please?
EW2　　　　Michener.

R　　　　　Michener.  Is this Mr. Michener?
EW2　　　　Yes, it is.

R　　　　　This is Appeals Referee McMaster.  I was calling in
　　　　　　　reference to the unemployment hearing for Connie Onley.  Are
　　　　　　　you ready to proceed?
EW2.　　　 Yes.

R　　　　　And do you have the other two individuals with you at this
　　　　　　　time?
EW2　　　　I do have Shaun and Sandra here, yes.

R　　　　　Okay.  I need to connect you into the call.  Everyone else
　　　　　　　is on the line at this point.  While I'm doing that, if you
　　　　　　　get disconnected, please hang up and I will call you back.
　　　　　　　Okay?
EW2　　　　Yes.

R　　　　　Thank you.  Okay.  Ms. Onley, are you still there?
C　　　　　Yes, ma'am.

R　　　　　Ms. Barker?
CL　　　　 Yes.

R　　　　　Mr. Hopp?
EL　　　　 Yes.

CONNIE I. ONLEY                    21-09-I-2331                                    4

R       Ms. Foreman?
EW1     Yes.

R       And Mr. Michener?
EW2     Yes.

R       All right.  I have all the parties on the line now.  At this
        time, there are a few things I need to advise you before we
        get started today.  The first is that I am digitally
        recording today's hearing.  That will become the official
        record of the hearing, and I turned on my recorder before I
        began contacting any of the parties.  We are on record at
        this time.  During the hearing today, if you get
        disconnected from the call for any reason, please hang up;
        and as soon as I realize you are no longer on the line, I
        will call you back.  During the hearing today, if you have
        difficulty hearing me or one another at any time for any
        reason, please let me know.  If at any time any party -- I'm
        sorry, I think I already said that.  If you get
        disconnected, I will call you back.  All right.  Ms. Onley,
        any questions about that information before we get started?
C       Excuse me?

R       Do you have any questions about the information that I just
        stated before we get started?
C       No, ma'am.

R       Ms. Barker?
CL      No.

R       Mr. Hopp?
EL      No.

R       Ms. Foreman?
EW1     No.

R       And Mr. Michener?
EW2     No.

R       All right.  I'm going to begin the hearing, then, at this
        time with some opening statements.  Good morning.  This is
        the Unemployment Compensation Hearing in Appeal Number 21-
        09-I-2331.  The Claimant is Connie Onley.  The Employer is
        Redner's Tiger Markets, Inc.  The hearing is taking place at
        the UC Referee Office.  It is Wednesday, May 26, 2021.  The
        time is 8:38 a.m.  The hearing was scheduled to begin at
        8:30 a.m.  I am Appeals Referee Tiffany McMaster.  I have
        been assigned by the Unemployment Compensation Board of
        Review to conduct today's hearing, take testimony and

CONNIE I. ONLEY          21-09-I-2331          5

 evidence on the issues under appeal, and issue a Written
 Decision to the parties.  The hearing is being digitally
 recorded which will become the official record of the
 proceeding today.  The Claimant is participating in the
 hearing today by telephone.  For the record, ma'am, would
 you please state and spell your first and last name?

C Connie, C-O-N-N-I-E; last name, Onley, O-N-L-E-Y.

R Ms. Onley, what is your complete mailing address, please?
C 700 Lower State Road, Building 23, Apartment B7, that is
 located in North Wales, Pennsylvania 19454.

R And, Ms. Onley, you are represented by counsel today, is
 that correct?
C Yes, ma'am, I am.

R Counsel, for the record, please state and spell your first
 and last name.
CL Allison, A-L-L-I-S-O-N; Barker, B as in Boy, A-R-K-E-R.

R Ms. Barker, is your address correctly listed on your Entry
 of Appearance?
CL Yes.

R Is that the address you would like a copy of the Decision
 mailed to?
CL Yes.

R Thank you.  The Employer is also participating in the
 hearing today by telephone.  The Employer is represented.
 Would the Employer's counsel please state and spell your
 first and last name?
EL Jason Hopp, J-A-S-O-N, H-O-P-P.

R And, Mr. Hopp, you represented to me earlier when I
 contacted you that you are in-house counsel, correct?
EL Yes.  I'm Vice President and General Counsel, Redner's
 Markets.

R And, Mr. Hopp, is the Employer's address correctly listed on
 the Hearing Notice?
EL The Audubon Village Drive address is the store address.  The
 corporate address is -- where I'm located is different.

R Is that where you would like the Decision mailed to as
 opposed to the Audubon Village Drive address?
EL Yes, please?

R All right.  Bear with me one second, please?

KS - 000201
KS - MSJ 0001167

CONNIE I. ONLEY                    21-09-I-2331                                    6

EL      Okay.

R       Hold on.  Is that the 3 Quarry Road, Reading?
EL      Yes, uh-huh.

R       Okay.  So, that is actually on the e-mail that I received
        from your Executive Assistant.  Is that the e-mail -- or,
        I'm sorry, is that the address you would like a copy of the
        Decision mailed to?
EL      Yes, thank you.

R       Now, Mr. Hopp, we also have an address for what appears to
        be a third party.  My belief is that that would be Employers
        Edge, if memory serves.  Do you -- does the Employer use a
        third-party tax consultant?
EL      Yes.

R       And do you...
EL      And they get...

R       ...know if that...
EL      ...a lot of...

R       ...address is correct?
EL      Yes, I believe it is.

R       Thank you.  All right.  Beginning with the Employer
        witnesses in the order in which I contacted you, so
        beginning with you, Ms. Foreman, would you please state and
        spell your first and last name for the record, and please
        give your job title?
EW1     Sure.  Alexis Foreman, A-L-E-X-I-S, F-O-R-E-M-A-N, Director
        of Employee Relations.

R       Mr. Michener, Ms. McGrory and Mr. Rhoton, would you all in
        that order do the same?  Please state and spell your first
        and last name, and please give your job title.
EW2     Karl, K-A-R-L, Michener, M-I-C-H-E-N-E-R.  I'm the Store
        Director.

EW3     Sandra, S-A-N-D-R-A, McGrory, M-C-G-R-O-R-Y, Meat Wrapper.
EW4     Shaun, S-H-A-U-N, Rhoton, R-H-O-T-O-N, Meat Cutter.

R       Mr. Hopp, did the Employer receive its Notices of Hearing
        for today?
EL      Yes.

R       Did the Employer also receive a packet of documents with its
        Notice of Hearing for today?

KS - 000202
KS - MSJ 0001168

CONNIE I. ONLEY          21-09-I-2331                    7

EL      Yes.

R       Ms. Onley, did you receive your Notice of Hearing for today?
C       Yes.

R       Did you also receive a packet of documents with your Notice
        of Hearing for today?
C       Yes.

R       Since both parties are represented by counsel today, may I
        assume that both parties are aware of their rights?  Ms.
        Barker on behalf of the Claimant?
CL      Yes.

R       Mr. Hopp on behalf of the Employer?
EL      Yes.

R       Do you waive recitation of the rights at this time, Ms.
        Barker?
CL      Yes.

R       Mr. Hopp?
EL      Yes.

R       Thank you.  All testimony in the hearing today must be under
        oath or affirmation.  Because the parties are testifying by
        telephone, there is a second oath I need to administer to
        you.  At this time, Ms. Onley, Ms. Foreman, Mr. Michener,
        Ms. McGrory and Mr. Rhoton, would you all please raise your
        right hands?  And please keep them raised until I advise you
        to lower them.

PARTIES DULY SWORN

TELEPHONIC OATH

R       You may lower your hands.  Let the record reflect the
        parties have been duly sworn.  Today's hearing arises as the
        result of an Appeal filed by the Claimant to a Notice of
        Determination mailed on March 1, 2021, which denied benefits
        to the Claimant under Section 402(e) of the Pennsylvania
        Unemployment Compensation Law.  Section 402(e) of the Law
        provides that a Claimant will be ineligible for benefits for
        any week in which they are temporarily suspended or
        discharged from employment for reasons which constitute
        willful misconduct in connection with the work.  Under that
        section of law, the Employer bears the burden of proof.  At
        this time, I am going to identify the documents in the
        hearing file for their admission into the record, beginning

KS - 000203
KS - MSJ 0001169

CONNIE I. ONLEY                21-09-I-2331                          8

with Referee exhibits.  Referee Exhibit #1 is the Notice of
today's hearing mailed on May 4, 2021.  Referee 1-A were the
typewritten Telephone Regulations that were attached to each
party's Hearing Notice.  Referee Exhibit 2 is an e-mail from
Ms. Barker, dated May 24, 2021.  This attached the
Claimant's counsel's Entry of Appearance on behalf of the
Claimant.  Referee Exhibit 3 is an e-mail from the Employer,
dated May 21, 2021, providing the contact information for
the representatives present today from the Employer.
Referee Exhibit 4 is an additional documentation for case
file memorandum.  This appears to indicate that additional
documents were submitted by the Claimant; however, I
thought, when I reviewed it, it appears as though it was
just a secondary copy of an Appeal Form.  Service Center
Exhibit #1 is the Certification of Documents.  SC-2 is the
Petition for Appeal completed by the Harrisburg UC Service
Center.  2-A is an Appeal Form which appears to have been
completed by the Claimant and was submitted electronically
on March 11, 2021.  Exhibit 2-B is another Appeal Form which
appears to have been completed by the Claimant and was
submitted electronically on March 15, 2021.  Exhibit 3 is
the Notice of Determination.  This was mailed on March 1,
2021 and lists the last day to appeal as March 16, 2021.
So, the Claimant's Appeal was timely.  Exhibit 4 is a four-
page Internet Initial Claim Form.  This document indicates
it was created on December 8, 2020.  Ms. Onley, when you
filed your claim for benefits, did you do that online?

C    Yes, ma'am.

R    Exhibit 5 is a five-page document.  This appears to indicate
the Employer's third party submitted information to the
Department electronically, and I will also note that there
were attachments indicated on Page 5.  Service Center
Exhibit 6 is the computerized Claim Record kept by the UC
Service Center related to the Application for Benefits filed
by the Claimant, effective October 4, 2020.  The attachments
that were part of the file are as follows for identification
purposes only:  Document #1 is on the letterhead of the
Employer, titled Policies and Procedures Acknowledgment
Form.  The next document is what appears to be numbered at
the bottom with the number 8.  At the very top is the -- it
is stated No Harassment.  The next document is titled
Employee Warning Record.  This appears to be dated October
7, 2020.  The next document is several pages.  It is a
handwritten statement and appears to be dated October 1,
2020.  The last document is a handwritten statement.  This
appears to be dated October -- I'm going to say I believe
it's 4, 2020.  Those documents will be available for the
Employer to offer into the record during the testimony.

KS - 000204
KS - MSJ 0001170

CONNIE I. ONLEY                21-09-I-2331                                    9

They will not be offered into the record at this time. With
respect to the Service Center and Referee exhibits only, Ms.
Barker, any objections to those documents becoming part of
the record?

CL    I would object to Service Center Exhibit 5. The third-party
individual who doesn't have firsthand knowledge filled that
out, so I would argue that that's hearsay.

R     Mr. Hopp, do you have any objection to Ms. Barker's -- I'm
sorry. Do you have any response to Ms. Barker's objection
to Exhibit 5?

EL    I have no objection to not considering that.

R     Okay. All right, the document -- I'm sorry. The objection
will be sustained in part. The document will be entered
into the record to show a response was provided. The
hearsay content contained within the response will not be
considered by the Referee.

CL    Okay, thank you.

R     Any other objections, Ms. Barker?

CL    No.

R     Mr. Hopp, any objections to the Service Center or Referee
exhibits?

EL    No.

R     Service Center and Referee exhibits are entered into the
record without objection, with the exception of Exhibit 5,
the hearsay content contained on that document. The
objection is sustained. The procedure that we're going to
follow in the hearing today is, Ms. Onley, I'm going to
begin with you briefly by asking you some background
questions regarding your employment history with Redner's
Tiger Markets, Inc. I am, then, going to turn to the
Employer. I would like to begin with the Employer witness
that can verify the background information provided by the
Claimant regarding her employment history, such as the dates
of employment, job title and rate of pay. I will, then,
take each Employer witness's testimony one at a time. I
will have questions for each witness potentially regarding
this Claimant's separation from employment. When I am done
with the questions I have, I will turn that witness's
testimony over to the Employer's counsel. Mr. Hopp may also
ask that witness questions. When Mr. Hopp has completed his
examination of the witness, Ms. Barker, you may cross-
examine that witness. After the Employer has completed its
testimony, I will turn back to the Claimant. I will begin
with you, Ms. Onley, by asking you a few questions about why

KS - 000205
KS - MSJ 0001171

CONNIE I. ONLEY               21-09-I-2331                    10

you stopped working for the Employer at the time you did.
When I am done with the questions I have for the Claimant,
Ms. Barker, you may also question your client.  When Ms.
Barker has completed her questions, Mr. Hopp, you have the
right to cross-examine the Claimant.  At that point, I will
turn back to each party once if there is any rebuttal or
additional testimony or evidence that party wishes to offer.
These would be things that you did not present the first
time around.  After that, I will move to close the hearing
record and the parties will get a Written Decision in the
mail from me as soon as possible.  Ms. Barker, on behalf of
the Claimant, any questions about the hearing procedure?

CL   No.

R    Mr. Hopp, on behalf of the Employer, any questions about the
     hearing procedure?

EL   No.

R    Okay.  Ms. Onley, are you currently working?
C    Yes.

R    When did you begin the job you're working in now?
C    The last week of March.

R    Prior to that employment, who was your last Employer?
C    Redner's Markets.

R    What was your job title there?
C    I was the head of the Seafoods, in charge of the Seafoods.

R    Okay.  Ms. Onley, I just want to make sure that I'm clear.
     When you filed your claim, you said you were an associate in
     the Meat Department.
C    Yes, ma'am.  That's part of the Meat Department, the
     Seafoods Department.  That's where I worked.

R    Okay.  Was your employment full-time or part-time?
C    Full-time.

R    What was your final rate of pay in that position, if you
     recall?
C    Well, I was at 14.25, I think.

R    Now, I'm asking this just as a point of reference, Ms.
     Onley.  If you disagree, that is okay.  If I told you that
     in the Employer's response, they indicated it was 14.75 an
     hour, does that sound correct?
C    It could be, yes.

KS - 000206
KS - MSJ 0001172

CONNIE I. ONLEY                21-09-I-2331                                    11

R       Could be?  Okay, fair enough.  All right.  Do you recall
        what your first day of work was, Ms. Onley?
C       It would have been October 15, 2017.

R       What was the last day that you worked for the Employer?
C       I believe -- well, I filed October 4th, so I believe it was
        like September 28.  I could be wrong.  I believe it was a
        Saturday, but I'm not accurate on that.

R       So...
C       And it was actually...

R       ...let's do this.  September 28th was a Monday, September
        26th was a Saturday.  Does it sound like it could have been
        on the 26th?
C       Yes, because I did work Saturdays, yes, ma'am.

R       Okay.  And why was that your last day of work for the
        Employer?  Did the Employer discharge you?  Did you
        voluntarily leave your job, or did you stop working for
        another reason at that time?
C       No, ma'am, my last day -- I was off on Sunday, so I didn't
        get to speak to anybody before Monday.  I went in to work on
        Monday and saw Karl, and we went into the office and talked
        about an hour.  And, after that hour, he told me to clock
        out and he would call me.

R       Okay.  And so, did you return to work after that?
C       No.  I was told to wait until he called, so that's what I
        did.

R       And did he call you?
C       The next day, he didn't call like he said he would.  So, I
        think I called them Monday morning, and he was going to get
        back to me; and, later on, he called me and told me I wasn't
        coming back.

R       Okay.  Were you told you were discharged?
C       On the phone call, yes.  He apologized and said, I'm sorry,
        but the news is they're not -- we are not going to have you
        back.

R       And at the time -- and was that Mr. Michener that told you
        that?
C       Yes, ma'am.

R       At the time he told you you were being discharged; did he
        tell you why?
C       He -- I believe he said for improper conduct.

KS - 000207
KS - MSJ 0001173

CONNIE I. ONLEY                    21-09-I-2331                              12

R    Do you recall being given any other reason besides that, or
     was that the only one?
C    Well, initially, when we spoke in the office, it was about
     apparently I was aggressive towards Sandy, which is not
     true.  I never went toward her.

R    Okay.
C    She came...

R    Ma'am...
C    ...to him...

R    Ma'am...
C    ...and told him that.

R    Ma'am, Ms. Onley...
C    Yes?

R    ...all I want to know is, were you given any other reason
     for your termination besides improper conduct?
C    No.

R    Okay.  Thank you, Ms. Onley.  I will get back to you.  Now,
     Mr. Hopp, given Ms. Foreman's job title, can I assume that
     she can verify the employment history information for me?
EL   Yes.

R    Ms. Foreman, what was the Claimant's job title?
EW1  Her job title was Meat Wrapper.

R    Was she employed full-time or part-time?
EW1  Full-time.

R    Do you know what her final rate of pay was?
EW1  14.75.

R    Is that per hour?
EW1  That is per hour, yes.

R    When did the Claimant begin her employment?
EW1  The date of hire was 10/15/2017.

R    What do you show as the last day of work?
EW1  10/5/2020.

R    Did she physically work on that date, to your knowledge?
EW1  Yes, she did.

KS - 000208
KS - MSJ 0001174

CONNIE I. ONLEY                    21-09-I-2331                                      13

R       And, Ms. Foreman, do you know why that was the Claimant's
        last day of work?  Was she discharged?  Did she quit or did
        she stop working for another reason?
EW1     She was discharged.

R       Did you participate in the decision to discharge the
        Claimant, Ms. Foreman?
EW1     Yes, I did.

R       What was the reason for the Claimant's discharge?
EW1     We terminated her for violating our harassment policy.

R       Is that the only reason for discharge, Ms. Foreman?
EW1     Yes, it is.

R       What does the Employer's harassment policy say as it relates
        to the reason for the Claimant's discharge?
EW1     Offensive remarks, comments, jokes as far as verbal conducts
        pertaining to an individual's race, color, religion,
        national origin, sex, pregnancy, childbirth or related
        medical conditions, age, disability or handicap, business
        status, service member status or any other categories
        protected by federal, state or local law...

R       And are you...
EW1     ...as always...

R       Ms. Foreman, are you reading from something?
EW1     Yes, I am.

R       What are you reading from?
EW1     I'm reading from Page 8 of our Company Handbook, which
        outlines our harassment policy.

R       And, to your knowledge, was that one of the documents in the
        file?
EW1     It's one of those.  It was listed as Document #2.

R       Well, no, it's not.
EL      I believe when you referred to various documents, starting
        in #1...

R       Yeah.
EL      ...#2...

R       No, that was just...
EL      Yeah.

KS - 000209
KS - MSJ 0001175

CONNIE I. ONLEY                21-09-I-2331                                    14

R       That was just to separate them out.  I didn't -- I
        understand what you're saying.  But that's -- we're going to
        mark this as Employer's Exhibit 1.  Ms. Barker, any
        objection to Employer's Exhibit 1?
CL      My only objection is -- just sort of for the record -- that
        it's just a single page out of what appears to be a bigger
        document.  So, I would object that it can be taken out of
        context and there might be other relevant parts.

R       Mr. Hopp, do you have any response to that objection?
EL      Yeah, it's -- the testimony which would come from Ms.
        Foreman would state that this is the portion, this is the
        policy that, the specific policy that formed the basis of
        the termination of the Claimant.  Ms. Foreman would testify
        that this policy is not misstated or taken out of context
        and is consistent with standard harassment policies in the
        industry, and it's a company record that she can
        authenticate.

R       Okay.  Ms. Barker, your objection to Employer's Exhibit 1 is
        noted but overruled.  Employer's Exhibit 1 is entered into
        the record.  Ms. Foreman, does this policy specify what will
        happen if an employee violates it?
EW1     Yes, it does.  It states on Page 8 of the Company Handbook,
        violation of this policy will result in disciplinary action
        up to and including termination.

R       And how are...
EW1     This is in the second paragraph.

R       I am sorry, ma'am.  I apologize.
EL      Hold on.

R       How are employees made aware of this policy, Ms. Foreman?
EW1     They are asked to read this policy while doing onboarding
        for their new-hire paperwork.  And we also have a document
        showing that Connie signed acknowledging that she read and
        understood the material in the Handbook, and that we could
        enter that in as well.

R       And what is that document titled?
EW1     Policies and Procedures Acknowledgment Form.  Initially, you
        referred to it as Document #1.
EL      I believe that it is admitted.

R       No, it has not been.
EL      Well, you referred to it as Document #1.  Employer 1 is
        that...

KS - 000210
KS - MSJ 0001176

R       I believe...
EL      ...document.

R       Let's just clear this up right now.  I believe I referred to
        the document as page, not....
EL      All right.

R       ...as document.  They were not entered into the record as an
        exhibit.  I believe I was clear that I said those documents
        may be offered during the testimony.
EL      All right, very well.  So, then -- so, from my records,
        Employer Exhibit 1 was Page 2...

R       Employer's...
EL      ...of the...

R       ...Exhibit 1 was the policy.
EL      Okay, thank you.

R       I am marking as Employer's Exhibit 2 the document identified
        by Ms. Foreman as the Policies and Procedures Acknowledgment
        Form.
EL      Thank you.

R       Ms. Barker, any objection to Employer's Exhibit 2?
CL      No.

R       Employer's Exhibit 2 is entered into the record without
        objection.  Now, Ms. Foreman, how is the Employer alleging
        the Claimant violated this policy?
EW1     The harassment policy, by her comments towards her co-
        worker, Sandra, about discussing a sex toy after watching a
        particular movie.  She also suggested you could pull a prank
        on another employee by hiding the sex toy in their coat.
        And the Claimant admitted both these occurrences to the
        Store Director.

R       Okay.  Were you present when she allegedly did so?
EW1     I was not present.

R       Okay.  How did you become aware of the alleged incident, Ms.
        Foreman?
EW1     Karl Michener, the Store Director, contacted me.

R       And did you...
CL      Sorry, Referee.  Referee, I'll just object to her testimony
        regarding what others told her as being hearsay.

R   Your objection is noted but overruled.  After the
    information was reported to you by the Store Director, Ms.
    Foreman, did you do anything with that information?

EW1  Yes, I did.  I asked Karl to speak with Connie, as well as
    get statements from Sandra and Shaun.

R   Mr. Hopp, do you have additional questions for Ms. Foreman?

EL   Yes, just more clarification.  So, Exhibit -- Employer's
    Exhibit 2, the Policies and Procedures Acknowledgment Form,
    how is that generated, Ms. Foreman?

EW1  When an employee has applied and is then offered a position,
    this is an onboarding document that they are to fill out for
    new-hire paperwork.  And once this is generated, the
    employee has read and understands the policies, and that's
    what they're signing off on.  This is part of the new-hire
    packet upon hire.

EL   And Employer Exhibit 2, the name at the bottom is what?

R   Okay.
EW1  Connie...

R   Mr. Hopp...
EW1  ...Onley.

R   ...I'm sorry, doesn't the document speak for itself?  It's
    already been entered into the record.  I don't know where
    we're going with this.

EL   Yes, ma'am, that's fine.  Based on your satisfaction with
    the document speaking for itself, I have no further
    questions of Ms. Foreman.

R   Ms. Barker, do you have any questions for Ms. Foreman?
CL   Yes.  Ms. Foreman, does this -- the policy, Employer's
    Exhibit 1, was that also applied to Ms. McGrory and Mr.
    Rhoton?
EW1  Yes, it was.

CL   Okay.  And if you see at the bottom of Employer's Exhibit 1,
    it's kind of cut off, but it says if you have any concern or
    know harassment policy may have been violated by anyone,
    you, from your knowledge, what -- is that a direction of how
    to, how and when someone should report something they
    believe is a violation of this policy?
EW1  That is correct.

CL   Okay.  And what -- when should someone report that they
    believe there was a violation of this policy?

CONNIE I. ONLEY                21-09-I-2331                        17

EW1    I would think when they believe there was a violation of
       policy, they should offer that -- I'm not sure...

CL     Okay.
EW1    ...of what you're asking.

CL     I just -- I'm in a car.  Because I don't know what the
       remainder of the no-harassment policy says, but I'm just
       kind of trying to find out what that says, that whole part,
       what the remainder of it would say.
EW1    It's simply stating that if you feel that someone is
       violating the harassment policy, it directs you to contact
       your direct supervisor and/or HR Coordinator or Director.

CL     Okay.  Were you ever directly contacted by Ms. McGrory or
       anyone else regarding anything related to Ms. Onley?
EW1    I was contacted by Karl.

CL     Okay.  So, not directly by Ms. McGrory?
EW1    No.

CL     Okay.  Did Ms. Onley ever report any violations of this no-
       harassment policy, to your knowledge?
EW1    Not that I'm aware of, no.

CL     Okay.  Did you speak directly to Ms. Onley about any of the
       alleged comments that were made?
EW1    Not that I recall.

CL     Did you speak directly with Ms. McGrory about anything that
       Ms. Onley said?
EW1    No, I did not.

CL     And you testified that you directed Mr. Michener to speak
       with Ms. Onley and get statements from Ms. McGrory and Mr.
       Rhoton.  Why did you not ask him to get a statement from Ms.
       Onley?
EW1    I did.

CL     Okay.  And do you know if he did that?
EW1    Yes, he did.

CL     Was that a written statement?
EW1    I don't believe we received a statement from Ms. Conley --
       I'm sorry, from Connie Onley.

CL     And did you ever hear from Ms. McGrory that anything that
       Ms. Onley may or may not have said was offensive to her?
       Did she ever tell you that directly?

KS - 000213
KS - MSJ 0001179

CONNIE I. ONLEY                    21-09-I-2331                                    18

EW1     I already testified that.

CL      Okay.  And did you, were you ever present for any —— did you
        ever directly hear Ms. Onley say anything that would be a
        violation, in your opinion, of this no-harassment policy?
EL      Well, objection.

EW1     I already testified...
EL      Asked and answered.

EW1     ...to that as well.
EL      It's already...

R       Okay, hang on.  Hang on.  I'm sorry.  Hang on.  Mr. Hopp,
        start your objection over again because I missed the first
        couple of words.
EL      Asked and answered.  Ms. Foreman already testified she
        didn't personally speak with Ms. Onley on this matter.

R       Well, that wasn't her question, Mr. Hopp.  It was whether or
        not she ever observed the Claimant violate the policy in any
        way.  I don't believe it's entirely relevant, though, Ms.
        Barker, but it's not asked and answered.  So, the objection
        is overruled.  Ms. Foreman, do you have any answer?
EW1     I would like her to restate that because that's not how I
        heard the question, either.

CL      Did you ever hear Ms. Onley say anything that you believe is
        a violation of the no-harassment policy?
EW1     No.  And, again, I already answered that.

CL      Okay.  All right.  That's all I have, Referee.

R       Mr. Hopp, do you have any redirect to Ms. Foreman?
EL      No.

R       All right.  Mr. Michener, I'd like to ask you some questions
        next, please?  Mr. Michener, Ms. Foreman testified that you
        reported something to her involving Ms. Onley.  Is that
        correct?
EW2     Yes.

R       Do you recall on what date you did so?
EW2     It would have been October 1st or 2nd.  I think October 2nd.

R       And what prompted you to contact Ms. Foreman at that time?
EW2     The statement from Sandra McGrory.

CONNIE I. ONLEY                21-09-I-2331                              19

R        And had you -- how did that statement come about?  Can you
         explain what happened?
EW2      There was a conversation going on between...

R        No, no, no.
EW2      ...Sandra...

R        What I'm asking is, how did you become aware of what you
         eventually reported?  I'm trying to understand the
         foundation of that.
EW2      Well, as the Store Director, I'm involved with what's going
         on in the store.  The statement was given to me when I came
         to work from my Assistant Manager, who was here when this
         happened.

R        And based on what the Assistant Manager reported to you, is
         that what prompted you to contact Ms. Foreman?
EW2      Based on his information, and also after reading the
         statement from Ms. McGrory.

R        After you reported this information to Ms. Foreman, what, if
         anything, did you do?
EW2      I got the statement from Mr. Rhoton, and then brought in Ms.
         Onley to talk about what happened.

R        Do you recall on what date you spoke to Ms. Onley?
EW2      I believe it was Monday, the 5th.

R        Of October?
EW2      Yes.

R        Okay.  And...
EW2      It would have been her last day worked.

R        And tell me about that conversation, Mr. Michener.
EW2      I went through essentially the statement that was written
         from Ms. McGrory first, which alluded to politics as the
         catalyst for the argument that day and discussed if that was
         conversation which she was a lone participant or if both
         were lone participants of, and she had said yes.  She showed
         me text messages on her phone, that they communicated back
         and forth about it with no animosity, just political
         conversation between two co-workers at that point.  Then, I
         discussed the use of the toy following her watching Fifty
         Shades of Grey, which she alluded to, you know, her being,
         you know, a woman and without a, sorry, without her husband
         anymore, and essentially, you know, sometimes you have to --
         anyway.  And then, also, Mr. Rhoton's statement, which goes
         along with Ms. McGrory's statement about the use of a toy.

KS - 000215
KS - MSJ 0001181

And then, I also spoke to her about the use of the toy as part of a prank on Mr. Rhoton by putting it in his meat coat. So, she didn't deny, you know, those things. She admitted that she did.

R       Well, what did she say?

EW2     Again, she said that she did use the -- well, did speak about using the toy after watching the movie with Ms. McGrory; and, also, that she was going to play a prank on Shaun by putting a sex toy in his coat pocket, his meat coat pocket.

R       Did anything else happen during that conversation, Mr. Michener?

EW2     It was a long conversation about that. The only other thing that stands out is that she felt that she didn't want other employees to get in trouble for what we were talking about. I'm not sure why she said that. She didn't complain about any of the employees she was working with. She did say that the conversation was brought up about the use of toys previous to that date. I don't remember in what context, though, or who brought up that conversation.

R       Okay. Mr. Hopp, do you have additional questions for Mr. Michener?

EL      Yes. Mr. Michener, you know, this is proceeding with the record, and we need to clarify things, because you keep using the referenced toy. And I think, you know, we understand what you're referring to, but the record needs to speak for itself. So, can you specifically state what Ms. Onley admitted to using when you used the word toy?

EW2     A dildo.

EL      All right. And did she admit to using this dildo, the sex toy to another employee in the workplace?

EW2     Yes.

EL      Because you used the word discussed. And when -- I wanted to clarify with that discussion. Where did that discussion with other employees take place?

CL      I would object to that. I don't believe Mr. Michener was present for any conversation, so it would just be hearsay.

EL      No, it's the admission of the Claimant, what did she admit to where -- what she discussed and with whom.

R       Okay. So, the...

EL      I mean, that's...

KS - 000216
KS - MSJ 0001182

R       Okay, excuse me.  So, Ms. Barker, your objection is noted but overruled.  Based on that clarification, I don't believe that he is attempting to elicit hearsay.

EL      All right.  So, Mr. Michener, where did Ms. Onley admit to having this discussion?

EW2     In the Meat Department.

EL      Did she -- was this during the workday where she was having this discussion?

EW2     It was.  Three employees were back there in the Meat Department at the time: Ms. Onley, Ms. McGrory and Mr. Rhoton.

EL      All right.  Now, did any time prior to this day did Ms. Onley complain to you or, to your knowledge, to any other supervisors at the store of any employee she worked with for any reason?

EW2     No.

EL      Now, did you ever receive any complaints prior to this discussion with Ms. Onley that Ms. McGrory engaged in any kind of discussion with sex toys?

EW2     No.

EL      I have nothing further.

R       Ms. Barker, do you have questions for Mr. Michener?

CL      Yes.  Mr. Michener, did -- there was reference to some prank, read of a prank about putting the sex toy in a coat.  Did, to your knowledge, did that ever actually occur?

EW2     No.

CL      Okay.  And did you get a statement from Ms. Onley the day that you spoke with her, a written statement?

EW2     I didn't get a written statement.  What I recall is, as Ms. Onley stated, we spoke for about an hour.  And, after that, I asked for a written statement, and she basically said we just -- you want me to write all that down?

CL      Were you taking any notes while she was telling you -- or while she was speaking to you?

EW2     I was not.

CL      Okay.  And you had testified that, you know, the conversation had been brought up before.  Did Ms. Onley tell you that Ms. McGrory is the one who first spoke about a sex toy?

EW2     Yes.

KS - 000217
KS - MSJ 0001183

CONNIE I. ONLEY                 21-09-I-2331                    22

CL    Okay.  And did you discipline Ms. McGrory for that?
EW2   I responded to that by talking to Ms. McGrory again and
      noting that Ms. Onley spoke that way, and she denied that.
      So, I did not discipline a person who was denying that.

CL    Okay.  And did Ms. McGrory ever tell you when Ms. Onley
      allegedly first spoke about a sex toy?
EW2   She did not.

CL    Okay.  And the day that Ms. McGrory made the statement, you
      testified that there had been a conversation regarding -- I
      think you said politics, is that correct?
EW2   Yes.

CL    And did anyone -- did Ms. Onley or anyone else report to you
      that Ms. McGrory had been screaming and yelling in the
      department?
EW3   Um-hum.

EW2   Yes.
EW3   Um-hum.

CL    Okay.  Was Ms. McGrory disciplined for that?
EW2   No.

CL    Okay.  And she -- Ms. McGrory is still an employee at
      Redner's, isn't that correct?
EW2   Yes.

CL    Okay.  And do you know what, if Ms. McGrory ever said
      anything related to, race-related matters at the -- as you
      phrased, the politics, but was it race-related?
EW2   The only thing I'm aware of is what was in the statement.

CL    Okay.  Did Ms. Onley express to you what Ms. McGrory had
      been yelling about?
EW2   Ms. Onley stated that the politics were essentially when the
      riots were going on and who was the cause of it, I believe
      in general was the politics that were being discussed.  I
      know antifa and I think the Proud Boys were possibly brought
      up when I discussed this with Ms. Onley.

CL    Okay.  And did Ms. McGrory receive any discipline as it
      related to those discussions?
EW2   No.  I didn't receive a complaint.

CL    Okay.  Do you need to receive a complaint in order to issue
      discipline to somebody?
EW2   Well, I don't think politics are off limits for discussion.

KS - 000218
KS - MSJ 0001184

CONNIE I. ONLEY                    21-09-I-2331                          23

CL      Well, if they violate the no-harassment policy in relation
        to an individual's race, that would violate Redner's no-
        harassment policy, correct?
EW2     Could you -- I'm sorry.  Could you say it one more time?

CL      If an employee was speaking about politics but as it relates
        to race, or making comments about, for example, the Black
        Lives Matter movement...
EL      I'm...

CL      ...would that...
EL      I'm going to object to -- if you would like me to state the
        basis?

R       Yes.
EL      As to relevance.  We're -- Redner's is alleging that the
        Claimant was terminated for violation of the sexual
        harassment policy.  I understand an argument could be made
        that we're not enforcing that policy equally; however,
        there's no suggestion being made that Ms. McGrory sexually
        harassed the Claimant or anyone else.  Therefore, any
        discussions as to politics, et cetera, is irrelevant.

R       Ms. Barker, do you have a response to that objection?
CL      Yes.  Our response is, the day at issue, there was not --
        there's been no testimony that there was anything related to
        sex being discussed.  It was politics and it was race-
        related, as my client will testify to.  And that's exactly
        the point.  The relevance of it is that this same no-
        harassment policy -- which includes race and sex -- was not
        being enforced evenly.

R       All right.  Mr. Hopp, your objection is noted but overruled.
        I'm going to allow it in order for the record to be
        completed, and it will be considered by me for whatever
        probative value it may have.  Go ahead, Ms. Barker.

CL      Okay.  Mr. Michener, if an employee raised a concern that
        political race-related discussions were happening, would
        that be considered a violation of the no-harassment policy?
EW2     If that person felt harassed, yes.

CL      Okay.  And did Ms. McGrory tell you that she felt harassed
        by Ms. Onley?
EW2     I don't recall.

CL      Okay.  So...
EW2     I know...

KS - 000219
KS - MSJ 0001185

CONNIE I. ONLEY                    21-09-I-2331                               24

CL      ...what...

EW2     I know that she told me she felt that that conversation was
        unwarranted, and she wanted nothing to do with it, which I
        think is reflective of her statement as well.

CL      Okay.  And if an employee -- if Ms. McGrory did not report
        any alleged comment about a sex toy until over a month
        later, is it fair to say that she maybe did not feel
        harassed at the time that it happened?

EL      Objection, calls for speculation.

R       Sustained.

CL      Did you take into consideration the time between when any
        alleged comment happened by Ms. Onley and the time it was
        reported?.

EW2     No.

CL      Did you take into consideration that why it was after
        reported what had happened the day -- issue the final day of
        Ms. Onley's employment?

EW2     Sorry, repeat that.

CL      Did you take into consideration that it wasn't until Ms.
        McGrory and Ms. Onley had a discussion related to politics
        that then, suddenly, an issue, an alleged issue with the sex
        toy was brought up?  Did you take -- did you consider that
        and investigate that and address...

EW2     I investigated based off of the statement that I had
        received from Ms. McGrory.  I followed its, I guess, its
        timeline or what happened based off of that statement.
        That's what I investigated.

CL      Okay.  And just to be clear, did Ms. McGrory ever report to
        you that Ms. Onley made any sexual advances to her?

EW2     Not -- no.

CL      Any requests for sexual favors?
EW2     No.

CL      Any offensive sexual remarks?
EW2     You mean apart from what the statement is?

CL      I just mean at any time.
EW2     Based off of the statement, I would say she took offense
        from being told about the use of a sex toy after watching a
        movie and claiming it, and the discussion of using it as a
        prank.

KS - 000220
KS - MSJ 0001186

CL      Did you -- are you, as the Store Director, are you in the
        Meat Department?  You know, do you get to oversee or see
        what happens in the Meat Department?
EW2     On occasion.

CL      Okay.  Have you ever heard any discussions related to sex in
        the Meat Department?
EW2     I don't recall any...

CL      Have you ever...
EW2     ...such discussion...

CL      Have you ever partaken in any discussions as it relates to
        sex in the Meat Department?
EW2     No.

CL      Did you ever hear Ms. McGrory say anything about sex or
        anything related to sex in your presence?
EW2     No.

CL      Okay.  That's all I have, Referee.

R       Mr. Hopp, do you have any redirect of Mr. Michener?
EL      Yes, please, just to kind of button this up.  I would
        submit, Mr. Michener, Employer Exhibit 3, which is entitled
        Employee Warning Record.  Just for identification purposes,
        the signature of person preparing, Karl Michener, Store
        Director, dated October 7, 2020.  Did you write this
        document?
EW2     Yes.

EL      All right.  And is this document a business record of
        Redner's, kept in the ordinary course of business?
EW2     Yes.

EL      All right.  And then, at the top, it says Employee's Name,
        Connie Onley, the Claimant here; and date, October 7, 2020.
        So, you prepared this document after speaking to Ms. --
        after speaking to the Claimant?
EW2     Correct.

EL      All right.  And then, can you just clarify how you came
        about to writing this document and led to your decision for
        termination?
EW2     After gathering all the statements and speaking with Ms.
        Onley, I reported back to Ms. Foreman, and the discussion --
        or the decision was made to terminate based on harassment.
        So, I wrote up the main points of the harassment on this
        warning form after I spoke with Ms. Onley.

KS - 000221
KS - MSJ 0001187

CONNIE I. ONLEY                     21-09-I-2331                              26

EL       So, you communicated it on the phone with Ms. Onley that she
         was terminated for the basis of what's in the warning
         record?
EW2      Correct.
CL       Referee, I'm sorry, I'm just going to object.  My
         understanding of redirect is that it would just be based on
         what was elicited during cross.  It seems to be new
         testimony, and so I just want to object to that for the
         record.

R        I'm sorry, why is it that he's not allowed to ask additional
         questions on redirect?
CL       I just -- my understanding of redirect is that it would only
         be based on things that were elicited during cross-
         examination.  And that's my -- that's why I'm objecting.

R        Your objection is noted.  It's overruled.
CL       Okay.  All right.
EL       I would ask that Employer Exhibit 3 be moved into evidence.

R        Ms. Barker, any objection to Employer's Exhibit 3?
CL       No.

R        Employer's Exhibit 3 is entered into the record without
         objection.

EL       All right.  So, when you, Mr. Michener, when you spoke to
         Ms. -- to the Claimant on October 5th, did she ever tell you
         that she felt that she was being harassed by anyone?
EW2      No.

EL       All right.  Now, Ms. McGrory, I believe her title is Meat
         Wrapper.  Is that accurate?
EW2      Yes.

EL       All right.  And Mr. Rhoton is an hourly employee in the Meat
         Department, too?
EW2      Correct.

EL       All right.  So, neither of them are in a supervisory
         capacity...

R        Okay.
EL       ...in the...

R        Mr. Hopp, I need to just caution you about the extent in
         which you are leading in your questioning.
EL       Yes, ma'am, I will do better.  Thank you.  Are those two
         individuals supervisors?

KS - 000222
KS - MSJ 0001188

EW2    No.

EL     All right.  So, when was the first time you became aware of
       Ms. McGrory's allegations about the Claimant, that the
       Claimant discussed using a sex toy at work?

CL     Objection, Referee.  I believe this has been asked and
       answered.

R      Sustained.

EL     All right.  I have nothing further.

R      Ms. Barker, do you have additional questions at this time
       for Mr. Michener?

CL     Very briefly.  Mr. Michener, based on Employer's Exhibit 3,
       this piece of paper was not signed by Ms. Onley, is that
       correct?

EW2    Correct.

CL     And prior to you creating this paper, was there any other
       warnings or discipline ever issued to Ms. Onley prior to
       this?

EW2    Not from me.

CL     Okay.  And so, and this Employee Warning Record, it shows
       that you're an employee -- it shows different options, is
       that correct?  There's a first warning, second warning,
       third warning, correct?

EW2    Correct.

CL     Okay.  And so, Ms. Onley did not receive a first warning,
       second warning or a third warning for anything, any
       violation of any policies at Redner's, is that correct?

EW2    Any policies or this policy?

CL     Any policies as it would relate to her ultimately being
       terminated.

EW2    I don't have access to that.  I can't answer that with
       knowing -- none created by me, that I...

CL     Okay.

EW2    ...can say.

CL     Did you consider any other -- any previous discipline in
       your decision to terminate Ms. Onley?

EW2    It wasn't my decision to terminate Ms. Onley.

CL     Okay.  Okay, that's all I have.

EW2    Okay.

CONNIE I. ONLEY                    21-09-Y-2331

R All right. Unfortunately, we have run out of time for this
hearing, so I'm going to have to reschedule this matter to
conclude it. At this time, I'm going to give the parties
the opportunity to send an e-mail to my office by the close
of business today. What I need to know from the parties are
any dates that you are aware of in the next month -- and
that just gives us a broader spectrum to play with in terms
of rescheduling -- that the party is unavailable. So, Ms.
Barker and Mr. Hopp, on behalf of your respective clients, I
will be expecting you to be providing that information to my
office. You may do so via e-mail, and, again, that is by
close of business 5:00 today. If I do not hear from a
particular party or either party before the close of
business today, I will put this on my next available
schedule, and, absent an emergency, I will not be very
amenable to rescheduling the hearing due to any conflicts
that you may have been already aware of. Ms. Barker, any
questions about that?

CL No. Thank you, Referee.

R Mr. Hopp?

EL Just one question. Some witnesses, such as Mr. Michener and
Ms. Foreman, already testified. If they're no longer
needed, I don't need to determine their availability, I just
need to counsel need of them present.

R And that's a decision that you have to make, sir. I don't
know if there would be any rebuttal that you would want to
elicit from them, so I can't really answer that question. I
would just simply say prepare accordingly.

EL Yes, ma'am.

R Anything else, Mr. Hopp?

EL No.

R All right. Anything else, Ms. Barker, before we close for
today?

CL No.

R All right. I'm going to close the record at this time. It
is 9:36 a.m. and we will reconvene this matter at a later
date. Thank you all very much and have a nice day.

CL You, too.

EL Thank you.

CL Thank you.

EW1 Thank you.

R Thank you.

KS - 000224
KS - MSJ 0001190

CONNIE I. CONLEY                21-09-I-2331                          29

C       Thank you.

R       Bye-bye.
EW2     Thank you.

R       The record is closed.


I hereby certify that, to the best of my ability, the foregoing is an accurate transcript of the testimony given in the hearing held by the Referee in conjunction with the above-captioned case.

Enrico E. Fabian, Transcriptionist
DIAZ TRANSCRIPTION SERVICES
August 21, 2021

KS - 000225
KS - MSJ 0001191